UNITED STATES of America

v.

John DRUM.

Misc. No. 83–096.

United States District Court, M.D. Pennsylvania.

Aug. 12, 1983.

David Shipman, Asst. U.S. Atty., Harrisburg, Pa., for plaintiff.

Robert F. Simone, Philadelphia, Pa., for defendant.

## MEMORANDUM

HERMAN, District Judge.

The present action concerns the government's motion for criminal contempt sanctions against Defendant, John Drum, following his refusal to testify before a grand jury. Upon Drum's knowing and voluntary waiver of his right to a jury trial on the contempt citation, a non-jury trial commenced on June 22, 1983. The court took the matter under advisement upon completion of the trial and requested briefs. The action is now ripe for decision.

## I. FINDINGS OF FACT

On September 17, 1982, in the Eastern District of Pennsylvania, Drum entered a plea of guilty in criminal action No. 82–173–1 to the crimes of conspiring to manufacture methamphetamine and of attempting to manufacture methamphetamine. Defendant's Exhibit 2, at 6. The guilty plea was entered pursuant to a plea agreement in which the Eastern District United States Attorney's Office dismissed two counts of a four-count indictment. Moreover, the government agreed that no prosecution would be brought against Drum in the Middle District of Pennsylvania, although information concerning his activities in the Middle District would be presented to the Eastern District court for consideration in sentencing. *Id.,* at 2–3. These were the sole terms of Drum's plea agreement; the government never promised not to call Drum as a witness before a Middle District grand jury. Subsequently, the Eastern District Court sentenced Drum to five years in prison.

On March 16, 1983, while a grand jury investigating illegal drug activities was convened in the Middle District,[1] the government applied for an immunity order for Drum in order to compel Drum to testify before the grand jury. The court considered the motion during a hearing in chambers at 10:45 a.m. on that day.

Government Exhibit 1 (Transcript of March 16, 1983, proceeding). Drum was unrepresented and informed the court that he thought his attorney, Edward Reif, would be arriving. Drum also stated that his Eastern District plea agreement provided that he "would not be bothered with the Middle District of Pennsylvania", either in the sense of prosecution or grand jury testimony. *Id.,* at 4. The court recessed the proceeding for the government to determine the status of the Eastern District plea agreement and the whereabouts of Drum's counsel.

Later that morning, the government informed the court that it was apparent that Drum's counsel would not be attending the hearing. The government also produced a letter from the Eastern District United States Attorney's Office that memorialized the pertinent part of Drum's plea agreement. The letter clearly indicated that no prosecution would be brought against Drum in the Middle District. The letter did not mention any provision that Drum would not be called as a grand jury witness. *Id.,* at 7–8.

Accordingly, the court noted that the plea agreement, as characterized by the letter, stated only that the government would not prosecute Drum in the Middle District. The court then explained the immunity order to Drum, signed the order, and directed Drum to testify before the grand jury. *Id.,* at 11–12. The court and the government further informed Drum that if he did not testify he could be held in civil or criminal contempt. *Id.,* at 12.

Immediately thereafter, the government called Drum as a witness before the grand jury. Drum admitted that he had consulted with his attorney that morning. He then stated that he would not comply with the court's order to testify and he refused to state his reasons for this refusal. Government Exhibit 2 (Transcript of Drum's grand jury testimony), at 3, 5–6. Subsequently, the government moved for criminal con-

---

1. Grand Jury No. 81–252; Term: November 18, 1981, to May 18, 1983.

tempt sanctions against Drum pursuant to Fed.R.Crim.P. 42(b) and 18 U.S.C. § 401(3).[2]

## II. DISCUSSION

■ Based upon the above findings of fact, we find that Drum is guilty of criminal contempt of this court's immunity order of March 16, 1983. We clearly explained the order to Drum and informed him that his testimony could not be used to incriminate himself, unless he committed perjury. The court also told Drum that everybody owes his testimony to the government and that he had to testify. The immunity order, plus this court's oral statements to Drum, commanded Drum to answer all questions before the grand jury. Drum explicitly refused to obey the court's order and, thus, demonstrated his contempt of this court's authority. We find beyond any reasonable doubt that Drum wilfully, intentionally, and knowingly refused to obey the court order.

Drum raises three arguments why he should not be held in criminal contempt, all of which are without merit under the facts of this case. First, Drum contends that the government was required to bring a civil contempt action not a criminal contempt action.

### A. Civil Versus Criminal Contempt

■ When an immunized witness refuses to testify before a federal grand jury, the witness may be held in civil *or* criminal contempt. *See United States v. Petito,* 671 F.2d 68 (2d Cir.1982); *cert. denied,* —— U.S. ——, 103 S.Ct. 56, 74 L.Ed.2d 60 (1982); *In re Grand Jury Investigation,* 600 F.2d 420 (3d Cir.1979). The purpose of civil contempt is to coerce the witness into testifying. The purpose of criminal contempt is to punish the witness for his refusal to obey the court's order, thus vindicating the court's authority. *Id.* at 422–23. The decision to treat a refusal to testify as criminal contempt, rather than civil contempt, falls within the trial court's

discretion. *United States v. Leyva,* 513 F.2d 774, 779 (5th Cir.1975); *Watkins v. Howard,* 441 F.Supp. 486, 488 (E.D.Wisc. 1977). In exercising this discretion, the court should consider the feasibility of coercing the witness' testimony by civil contempt. *United States v. Wilson,* 421 U.S. 309, 317 n. 9, 95 S.Ct. 1802, 1807 n. 9, 44 L.Ed.2d 186 (1975), *quoting, Shillitani v. United States,* 384 U.S. 364, 371 n. 9, 86 S.Ct. 1531, 1536 n. 9, 16 L.Ed.2d 622 (1966); *In Re Grand Jury Proceedings, Harrisburg Grand Jury,* 658 F.2d 211 (3d Cir.1981). Moreover, the court is not required to expressly consider civil contempt on the record *prior* to the institution of criminal contempt proceedings against recalcitrant witnesses. *Id.,* at 217–18; *United States v. North,* 621 F.2d 1255, 1261 n. 9 (3d Cir. 1980).

■ Under the present circumstances, civil contempt would have been futile since the grand jury's term, at the time when Drum was called as a witness, had only two months remaining before its expiration. Therefore, any civil contempt sanction imposed upon Drum would have been merely two months, which is not a lengthy period to attempt coercion. When the potential duration of civil coercive confinement is severely limited, a court may consider civil contempt a futile sanction. *North,* 621 F.2d at 1263; *Harrisburg Grand Jury,* 658 F.2d at 218 (civil contempt is not available when the grand jury has expired). Moreover, civil contempt may not be sufficient when "the contemnor is already incarcerated and is therefore unlikely to respond to a threat of summary civil contempt." *North,* 621 F.2d at 1261 n. 9, *citing, Wilson,* 421 U.S. at 317 n. 9, 95 S.Ct. at 1807 n. 9.

■ Here, Drum was serving a five-year sentence. The maximum sentence he could receive for civil contempt was two months. We agree with the government that such a sentence, while Drum already was incarcer-

---

2. 18 U.S.C. § 401(3) provides the following:
 A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

* * * * * *

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

ated, would have little coercive effect and would be "a small price for [Drum] to pay for his refusal to comply with the court's order." *North,* 621 F.2d at 1255; Government's Brief, at 15. Finally, by the time the government had obtained pertinent documents and had proceeded against Drum, the grand jury term had totally expired, leaving criminal contempt as the only viable sanction. *See Harrisburg Grand Jury,* 658 F.2d at 217–18.

### B. Sufficiency of the Contempt Warning

■ Drum's second argument is that he was not properly warned of the consequences of his refusal to testify; nor was he properly indicted. First, Drum was properly warned of the consequences of his act. The court expressly told Drum that he could be held in civil contempt. Government's Exhibit 1, at 12. After this statement, the government immediately stated that "the Court could not only hold him in civil contempt, but if the government so elected, the government could have him indicted for criminal contempt as well. Or in the alternative, to civil contempt. It would be up to the Court in the final analysis." *Id.* The court agreed with this statement.

Thereafter, the government warned Drum twice of the consequences of his refusal to testify. The government called Drum as a witness before the grand jury shortly after the court had signed the immunity order and had directed Drum to testify. The following exchange occurred between the Assistant United States Attorney and Drum:

You have a copy of [the immunity] order that I gave to you, do you not, Mr. Drumm [sic]?

A. Yes.

Q. You have had an opportunity to consult with your counsel before coming in this morning over the phone?

A. Yes.

Q. Are you going to comply with this order?

A. No.

Q. Would you state to the Grand Jury your reasons why you will not comply with the order?

A. I am refusing to.

Q. *Do you realize, as Judge Herman stated to you, that you could be prosecuted for contempt of court for refusing to comply with this order?*

A. Yes.

Q. Appropriate proceedings will be instituted, Mr. Drumm [sic]. You may leave at this time.

A. Thank you.

(Whereupon, the witness was excused from the Grand Jury Room.)

Government's Exhibit 2, at 3 (emphasis added).

Later that day, the government recalled Drum before the grand jury. The government informed Drum that the court had immunized him so that any statements made could not be used to prosecute him. Drum admitted understanding that. *Id.,* at 5. Drum also stated that he had talked to his attorney and had told his counsel that the court had ordered him to testify. *Id.* The government then asked Drum a number of questions which Drum refused to answer. *Id.,* at 5–6. The government thus queried:

Q. On what grounds, Mr. Drumm [sic], are you refusing to answer? Are you refusing to answer these questions upon the advice of your attorney?

A. I'm doing it on my own accord.

Q. *Do you realize that your refusal could subject you to criminal or civil contempt of court?*

A. Yes.

Q. Were you involved in manufacturing methamphetamine at a laboratory in Factoryville, Pennsylvania, in 1981?

A. Refuse to answer.

*Id.,* at 6 (emphasis added). From this evidence, we find beyond a reasonable doubt that Drum was warned of the consequences of his refusal to testify.

Although Drum did not raise the issue in his brief, during the criminal contempt trial Drum argued that the court's explanation

of the immunity order indicated that Drum could be held in civil, not criminal, contempt. (Tr. 8–10).[3] The Second Circuit in *United States v. Petito*, 671 F.2d 68, 72 (2d Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 56, 74 L.Ed.2d 60 (1982), however, has held that "there is no requirement that a defendant be warned specifically or have notice that his conduct could be visited with a criminal as opposed to a civil sanction." *See also United States v. Seale*, 461 F.2d 345 (7th Cir.1972) (a contemptuous defendant need not be warned, nor even be aware, as to which of appropriate sanctions will be invoked). As the Second Circuit noted, a defendant has committed the act subjecting himself to criminal contempt the moment he refuses to answer any questions. Such a defendant has already chosen to disregard the law and risk the consequences at his own peril. *Id.*, at 73.

▪ As we observed above, we believe Drum was warned sufficiently that he faced civil or criminal contempt if he refused to testify. But even if Drum believed he would face only civil contempt, this would not excuse his actions that have brought forth this criminal proceeding. *See, e.g., United States v. Ray*, 683 F.2d 1116 (7th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 578, 74 L.Ed.2d 938 (1983), and text at 15 *infra*.

▪ As to Drum's allegation that the government had to indict him to charge him with criminal contempt, we find this claim to be patently without merit. Rule 42(b) provides that criminal contempt not occurring within the judge's presence may be prosecuted on notice, which "shall state the essential facts constituting the criminal contempt charged and described it as such." Fed.R.Crim.P. 42(b). Notice may be given orally by the judge in open court, or upon application by the United States Attorney "by an *order to show cause* or an order of arrest." *Id.* (emphasis added). Prosecution of criminal contempt is not subject to the indictment provision under the Fifth Amendment. *United States v. Martinez*, 686 F.2d 334, 343 (5th Cir.1982). Simple

notice is all that is required. That is, the notice must provide merely enough information to inform the defendant of the nature and particulars of the contempt charge. *Id.*, at 345. *See also United States v. Nunn*, 622 F.2d 802, 803 (5th Cir.1980) (grand jury indictment is not constitutionally required for criminal contempt); *Mitchell v. Fiore*, 470 F.2d 1149, 1152–53 (3d Cir. 1972), *cert. denied*, 411 U.S. 938, 93 S.Ct. 1899, 36 L.Ed.2d 399 (1973) (an order to show cause is sufficient to provide due process notice). Without doubt, this court's May 9, 1983, order to show cause why Drum should not be held in criminal contempt gave Drum more than adequate notice.

*C. The Eastern District Plea Agreement*

Finally, we turn to Drum's claim that the plea agreement he entered into in the Eastern District of Pennsylvania included a provision that he would not be called as a witness in the Middle District of Pennsylvania. We find that no such provision existed. During Drum's change of plea in the Eastern District Court before the Honorable John P. Fullam on September 17, 1982, Mr. Ruch, the Assistant United States Attorney handling the criminal action, informed the court of Drum's plea agreement. Mr. Ruch did not include any provision regarding grand jury testimony. Nor did Drum's counsel insert any additional promise. Defendant's Exhibit 2. Judge Fullam specifically asked Drum whether there were any promises or agreements "other than the agreement which has just been stated by the prosecutor [Mr. Ruch]," to which Drum responded in the negative. *Id.*, at 5.

▪ Drum asserts that the opening remark of his attorney handling the change of plea, Edward Reif, somehow amended his plea agreement to include the alleged witness provision. Reif stated, "If the Court pleases, this will be a change of plea in accordance with what occurred yesterday with the balance of the defendants." *Id.*, at 2. Reif testified at the criminal contempt trial that the plea agreement of a co-de-

---

**3.** Transcript of criminal contempt trial on June 22, 1983.

fendant, Ronald Pearce, whose guilty plea Judge Fullam had accepted the day before Drum's plea, contained a provision that Pearce would not be called as a witness in any proceeding in the Middle District. Tr. 25. Reif testified that his opening statement in Drum's change of plea hearing thus incorporated that provision. *Id.* We find this testimony incredible.

The change of plea hearing on September 16, 1982, in Criminal Action No. 82–173–2, in the Eastern District Court concerned only the guilty pleas of Drum's four co-defendants. Mr. Reif was not present at that hearing. Defendant's Exhibit 1. It is the plea agreement of Pearce that supposedly contained the provision as to Pearce not being called as a witness in the Middle District. Nevertheless, a simple reading of the hearing transcript demonstrates that no such promise was made. Rather, the government agreed only that Pearce (and co-defendant Corsetti) would not be prosecuted in the Middle District for the manufacture of methamphetamine. Defendant's Exhibit 1, at 4.

Drum argues that the following exchange between Judge Fullam, Pearce, and Pearce's counsel, Robert F. Simone, indicates the government's promise not to call Pearce as a witness in the Middle District:

> Q. Do you also understand that among the rights you would be giving up would be your privilege against self-incrimination? You could be questioned and made to testify about these events and could be prosecuted for perjury if you lied? Do you understand all that?
>
> A. No, I don't.
>
> Q. Well, maybe you had better discuss it with your counsel.
>
> ———
>
> THE COURT: Now, are we ready to go back to Mr. Corsetti?
>
> MR. SIMONE: Mr. Pearce.
>
> THE COURT: Mr. Pearce.
>
> MR. SIMONE: Let me state, Your Honor, I spoke with Mr. Pearce about his waiving his Fifth Amendment right—not actually waiving his right—yes, he is actually waiving his Fifth Amendment right because he could no longer incriminate himself. He knows that he has to speak to the Probation Office. Mr. Ruch has told me he does not intend to call him as a witness.
>
> THE COURT: That is fine and that is binding as far as this United States Attorney's Office is concerned. I just want to make it clear at least technically I am required to advise him that you would be giving up your right against self-incrimination.
>
> MR. SIMONE: Do you understand that, Mr. Pearce?
>
> DEFENDANT PEARCE: Yes, I do.

*Id.,* at 6–7.

This exchange, *at best,* indicates that the Eastern District United States Attorney Office agreed not to call *Pearce* as a witness *in the Eastern District.* No agreement existed that Pearce could not be called as a witness in the Middle District. More importantly, this agreement, if any, applied solely to Pearce. No where in any of the records is there any statement that this provision applied to Drum. Mr. Reif's oblique statement that Drum's change of plea was "in accordance with what occurred yesterday with the balance of the defendants," Defendant's Exhibit 2, at 2, does not incorporate the other co-defendants' plea agreements into Drum's plea agreement.

Thus, we find that Drum's plea agreement in the Eastern District did not include a provision that Drum would not be called as a witness in the Middle District. We found the testimony of the Assistant United States Attorney handling the underlying criminal action, Louis J. Ruch, to be credible that no such agreement existed. Nor does the government's evidence reveal an ambiguous plea agreement. To the contrary, the plea agreement was quite clear—no uncertainties existed.

[redacted] Furthermore, even if Drum did believe his plea agreement contained such a provision, this belief would not be a defense to Drum's refusal to testify. Questioning the wisdom, validity, or necessity of a court

order is not an excuse to a defendant's refusal to comply with that order. *United States v. Ray,* 683 F.2d 1116, 1127 (7th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 578, 74 L.Ed.2d 938 (1983); *United States v. Berardelli,* 565 F.2d 24 (2d Cir. 1977). If one believes an order is invalid, the remedy is to appeal. Absent a stay, however, a person must comply with the order. If a person makes a private determination that an order is incorrect, even if he is later proven correct, that person may properly be convicted for criminal contempt for violation of that order. *United States v. Stine,* 646 F.2d 839, 845 (3d Cir.1981). Nor is reliance upon the advice of counsel a valid defense for not obeying a court order. *United States v. Seavers,* 472 F.2d 607 (6th Cir.1973).

In conclusion, we find beyond a reasonable doubt that Drum knowingly and wilfully refused to obey this court's March 16, 1983, order to testify before the grand jury. An appropriate order will be entered.