NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2213
_____

JAMES LEAR,
Appellant

v.

PHOENIXVILLE POLICE DEPARTMENT; BOROUGH OF PHOENIXVILLE;
WILLIAM J. MOSSMAN, Individually and in His Official Capacity as Chief of Police;
NICHOLAS HELLER, Individually and in His Official Capacity as Police Officer;
THOMAS M. HYLAND, Individually and in His Official Capacity as Police Officer;
SHAWN S. MICHINOCK, Individually and in His Official Capacity as Police Officer,
JOHN DOES Nos. 1-10
_____

On Appeal from the United States District Court for the
Eastern District of Pennsylvania
(No. 2:16-cv-01338)
District Judge: Honorable R. Barclay Surrick
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 19, 2018

Before:  AMBRO, RESTREPO, and FUENTES, *Circuit Judges*

(Opinion filed: May 18, 2018)

_____

OPINION[*]

_____

FUENTES, *Circuit Judge.*

James Lear appeals the District Court's grant of summary judgment in his civil rights action under 42 U.S.C. § 1983 and Pennsylvania law.  We will affirm.

## I.

## A.

Since we write for the parties, we set forth only the essential facts.  In April 2014, Phoenixville police officer Nicholas Heller saw Lear—whose driver's license was suspended—operating a car in East Vincent Township.  After verifying that Lear had a suspended license, Heller reported his observations to East Vincent Township police officer Shawn Michinock.  After separately confirming Lear's license status, Michinock filed a citation and incident report.  Lear never received the citation.

A few days later, the Magisterial District Court issued a summons to Lear for a hearing regarding the citation.  While the summons was returned as undeliverable, a hearing was nevertheless held at which Heller testified and Lear was found guilty.  Because Lear did not appear at the hearing, a bench warrant was issued for his arrest.  Michinock and Heller both witnessed the issuance of the bench warrant.  Subsequently, Heller

---

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

informed other Phoenixville police officers—including Thomas Hyland—that a warrant had been issued for Lear's arrest.

Approximately one month later, Hyland saw Lear in North Phoenixville. After verifying the bench warrant, Hyland advised Lear that he was under arrest for a traffic violation. Before transporting Lear to the police station, Hyland asked him if he had weapons or contraband on his person. Lear responded in the negative.[1] However, Hyland recovered two cell phones and a large amount of cash from Lear's person.

At the station, Hyland sought permission to strip search Lear based on, *inter alia*, (1) Lear's criminal history; (2) Lear's arrest in a high drug and crime area; and (3) information from confidential informants that Lear frequently stored drugs in his crotch area. Ultimately, a supervisor allowed Hyland to strip search Lear. After the search began, but while Lear was still in his boxer shorts, Lear removed drugs from his boxer shorts and gave the drugs to Hyland. Lear was then required to pull his boxer shorts down, exposing his genitalia and buttocks.

**B.**

In March 2016, Lear filed this § 1983 action alleging malicious prosecution, false arrest, selective enforcement, unreasonable search and seizure, violations of his due process rights, conspiracy, and a derivative *Monell* claim. Lear also asserted state law

---

[1] While this fact is disputed, the precise nature of Lear's response is irrelevant for our purposes. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

3

claims for malicious prosecution and false arrest. The District Court granted summary judgment against Lear on all claims.[2] This appeal followed.[3]

## II.

Lear presents several arguments why we should reverse the grant of summary judgment on his false arrest and illegal search claims.[4] We address each in turn.

## A.

First, Lear maintains that the District Court erred in finding that a bench warrant was issued for his arrest. However, this argument ignores the testimony of Heller and Michinock that a bench warrant issued after Lear did not appear for the traffic citation hearing. What's more, there is also evidence that Hyland confirmed the bench warrant before arresting Lear. Based on this evidence, the District Court properly found that Hyland arrested Lear pursuant to an outstanding bench warrant.

## B.

Lear next contends that, even if the bench warrant existed, the District Court nevertheless erred in holding that Hyland had probable cause to arrest him. However, Hyland arrested Lear pursuant to the bench warrant, which provided probable cause for Lear's arrest.[5] Thus, this argument fails.

---

[2] Lear withdrew his *Monell* claim before summary judgment was entered.

[3] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We have plenary review over a grant of summary judgment. *Curley v. Klem*, 298 F.3d 271, 276 (3d Cir. 2002).

[4] Lear does not appeal the grant of summary judgment on his other claims.

[5] *See Luckes v. Cnty. of Hennepin, Minn.*, 415 F.3d 936, 939 (8th Cir. 2005) (noting that because the defendant "was named in a valid bench warrant . . . probable cause for his

## C.

Lear also asserts that Hyland violated his Fourth Amendment rights by not permitting him to pay the traffic citation fine in lieu of arrest. In support, Lear cites Pennsylvania Rule of Criminal Procedure 431(C), which states that "[w]hen a bench warrant is executed" an officer shall "accept from the defendant a signed guilty plea and the full amount of the fine and costs if stated on the warrant." However, Lear's reliance on Rule 431 is unavailing. Violations of state rules of procedure do not automatically violate the Fourth Amendment.[6] Instead, "the validity of an arrest under state law is at most a factor that a court may consider in assessing the broader question of probable cause."[7] Here, as the District Court rightly concluded, Rule 431 did not require Hyland to resolve Lear's citation in a high crime area. Rather, under the circumstances, Hyland could arrest Lear pursuant to the bench warrant and take him to the police station.

## D.

Lear further argues that the District Court erred in granting summary judgment on his false arrest claim based on the traffic citation because there was a factual dispute regarding whether he drove with a suspended license. We disagree. Even assuming *arguendo* that the citation was an arrest, Heller's account provided probable cause for

---

arrest pursuant to that warrant was established"); *see also In re Grand Jury Proceedings Harrisburg Grand Jury 79-1*, 658 F.2d 211, 214 (3d Cir. 1981) (observing that "[t]he simple fact of nonappearance provided . . . probable cause . . . for a bench warrant").

[6] *See United States v. Laville*, 480 F.3d 187, 193 (3d Cir. 2007) ("A significant body of caselaw makes clear . . . why a Fourth Amendment determination cannot turn on the exigencies of the law of a particular state or territory.").

[7] *Id.* at 192.

Michinock to believe that Lear drove without a license.[8]   What's more, Michinock independently confirmed that Lear's license was suspended before issuing the citation.

**E.**

Finally, Lear contends that Hyland lacked probable cause to strip search him. "Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe an offense had been committed."[9]   Here, as the District Court properly found—based on the information available at the time of the search—Hyland had probable cause to believe that Lear possessed illegal drugs.  As such, we reject this argument as well.[10]

**III.**

For the foregoing reasons, we affirm the District Court's grant of summary judgment.

---

[8] *See Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997) ("[A]n officer can lawfully act solely on the basis of statements issued by fellow officers if the officers issuing the statements possessed the facts and circumstances necessary to support a finding of the requisite basis.").

[9] *United States v. McGlory*, 968 F.2d 309, 342 (3d Cir. 1992).

[10] For this reason, we need not determine whether Hyland's conduct in performing the search is shielded by qualified immunity.