**John DRUM**

v.

**Carmen NASUTI, et al.**

**No. 85–4494.**

United States District Court,
E.D. Pennsylvania.

Nov. 25, 1986.

Leslie M. Cyr, LaBrum & Doak, Philadelphia, Pa., for plaintiff.

Jerome Gamburg, Robert Simone and Carmen Nasuti, Philadelphia, Pa., for defendant Edward Reif.

Cynthia J. Giles, Asst. U.S. Atty., Philadelphia, Pa., for federal defendants.

## MEMORANDUM AND JUDGMENT

KATZ, District Judge.

Plaintiff, John Drum, has sued three lawyers in private practice [hereinafter sometimes referred to as private attorneys]. They negotiated plea agreements for Drum

and two co-defendants in the United States District Court for the Eastern District of Pennsylvania. Drum has also sued the prosecuting attorneys and the F.B.I. agents [hereinafter sometimes referred to as federal defendants]. The prosecutors negotiated the terms of plea agreements with the private attorneys.

Plaintiff's amended complaint sets forth claims under the civil rights statute, 42 U.S.C. § 1983, and its federal counterpart, a *Bivens* action.[1] *Paton v. LaPrade,* 524 F.2d 862, 871 (3d Cir.1975). It alleges that the private defendants conspired with the federal officials to deprive plaintiff of his right to plead to the plea of his choice.[2] Plaintiff seeks compensatory and punitive damages. This court has jurisdiction over such matters. 28 U.S.C. § 1343.

The three private attorneys and the federal defendants have filed motions for summary judgment. The defendants allege that there are no disputed issues of fact and that they are entitled to judgment as a matter of law.

The legal grounds asserted in these motions are that collateral estoppel precludes Drum from relitigating issues previously decided adversely to the plaintiff; that the statute of limitations bars Drum's recovery; that the federal defendants are absolutely immune from liability for their testimony in a judicial proceeding; and that plaintiff has not produced evidence to support his claim that the federal defendants conspired with the private attorneys to deprive him of his civil rights.

For the reasons stated below, the motions for summary judgment will be granted. It is necessary first to review the factual and procedural background.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The documents submitted outside the pleadings, which are considered in the light most favorable to the plaintiff, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), establish the following facts.

In May of 1982, federal law enforcement officials arrested plaintiff John Drum and charged him and four others with offenses relating to the manufacture and distribution of a controlled substance, methamphetamine. On September 17, 1982, John Drum entered a guilty plea under an agreement with the government before Judge Fullam in the United States District Court for the Eastern District of Pennsylvania.

Drum had pled a day later than the other co-defendants, Pearce and Corsetti, because his counsel, Reif, was on trial in another proceeding, hence unavailable. When Drum did plead, Reif told Judge Fullam that Drum understood his plea agreement to be in accordance with that of his co-defendant Pearce's. While Reif was not present at Pearce's hearing, Reif had spoken to Simone, Pearce's attorney about the terms of Pearce's plea. Simone told Reif that in Pearce's change of plea hearing the matter of testifying in other proceedings had been brought to Judge Fullam's attention. Pearce's change of plea hearing, at which Drum was present, included the following exchange:

> THE COURT: Do you also understand that among the rights you would be giving up would be your privilege against self-incrimination? You could be questioned and made to testify about these events and could be prosecuted for perjury if you lied? Do you understand all that?
>
> MR. PEARCE: No, I don't.
>
> THE COURT: Well, maybe you had better discuss it with your counsel.
>
> THE COURT: Now, are we ready to go back to Mr. Corsetti?

---

1. I appointed counsel to represent Drum.

2. This can be distinguished from a motion to withdraw his guilty plea based on plaintiff's misunderstanding of the terms of his plea agreement. *See* F.R.C.P. 32(d) and 28 U.S.C. § 2255. While plaintiff has already unsuccessfully filed, under 28 U.S.C. § 2255, both an application for specific performance of his plea agreement and a Petition to Correct or Modify Sentence, he has not, as yet, pursued an action to withdraw his guilty plea based on his misunderstanding if its terms.

MR. SIMONE: Mr. Pearce.

THE COURT: Mr. Pearce.

MR. SIMONE: Let me state, Your Honor, I spoke with Mr. Pearce about his waiving his Fifth Amendment right—not actually waiving his right—yes, he is actually waiving his Fifth Amendment right because he could no longer incriminate himself. He knows that he has to speak to the Probation Office. Mr. Ruch has told me he does not intend to call him as a witness.

THE COURT: That is fine and that is binding as far as this United States Attorney's Office is concerned. I just want to make it clear at least technically I am required to advise him that you would be giving up your rights against self-incrimination.

MR. SIMONE: Do you understand that, Mr. Pearce?

MR. PEARCE: Yes, I do.

THE COURT: The important thing is if you are questioned and do testify, you must tell the truth and if you don't, you can be prosecuted for perjury; do you understand that?

MR. PEARCE: Yes, sir.

Change of Plea Transcript at 6–8 *United States v. Ronald Pearce*, (Crim. No. 82–173–2), (Sept. 16, 1982).

As Reif had told Judge Fullam, Drum understood his plea agreement to be the same as Pearce's. However, there was no reference to the matter of being called as a witness; on the record, Drum pled guilty to conspiracy and attempting to manufacture methamphetamine, in return for which, the government promised not to prosecute him for his methamphetamine activities in the Middle District of Pennsylvania, but provided that such illegal activities could be presented to the Eastern District Court for consideration in sentencing. The prosecutor said at Drum's change of plea hearing, in response to the court's question as to whether there were any other agreements or understandings, "there are some further agreements but that is the plea." Change of Plea Transcript at 2, *United States v.*

*John Drum*, (Crim. No. 82–173–1) (Sept. 17, 1982).

The record of Drum's change of plea hearing thus does not directly refer to any plea agreement term regarding testifying in any district, although Reif states that Drum understood his plea to be in accordance with Pearce's, and Pearce's plea did include a reference to Ruch's statement that Ruch did not intend to call Pearce as a witness. However, Drum responded "no" to Judge Fullam's inquiry as to whether anyone made any promises or agreements with him other than the agreement stated by the prosecutor. *Id.* at 5. The following colloquy then occurred between Judge Fullam and Drum:

THE COURT: Now, you understand under that agreement if you plead guilty to Counts 1 and 4 the government would withdraw Count No. 2 and you would not be prosecuted on that and that the government has also agreed that there would be no federal prosecution for anything related to your methamphetamine activities in the Middle District of Pennsylvania?

MR. DRUM: Yes, Your Honor.

THE COURT: And other than that the government made no commitments; is that correct?

MR. DRUM: Excuse me for one minute, Your Honor.

MR. DRUM: Yes.

(Pause)

I understand, Your Honor.

*Id.* at 5.

The subsequent trial for criminal contempt, brought against Drum for his refusal to testify at a Middle District grand jury proceeding, reveals that, despite the above colloquy at his hearing, Drum claims that his plea terms incorporated the statement at Pearce's hearing that Ruch did not intend to call Pearce, and by implication, Drum, as a witness. Additionally, Drum claims to have understood the statement at Pearce's change of plea hearing to mean that the government promised not to call the defendants as witnesses before a grand jury in the Middle District, as well as the

Eastern District, of Pennsylvania. The government understood the promise not to call Pearce, and by implication, Drum, as a witness, as limited to grand juries in the Eastern District of Pennsylvania. Drum claims that, during the pause in the record, Drum asked Reif "if he was sure that plaintiff would not be called as a witness before the Middle District grand jury, to which Mr. Reif responded affirmatively." Interrogatories of Defendant, Edward Reif, Addressed to Plaintiff, Answer to Question 2. Reif in response to plaintiff's interrogatories asking whether Reif or anyone he was aware of informed Drum that he would not be called as a witness in any other proceedings involving the investigation of drug related activities in the Middle District of Pennsylvania states that the plaintiff himself, initially, had brought this matter to his attention, and subsequently other counsel had advised Reif that the "matter of testifying in other proceedings had been brought to the attention of Judge Fullam." Interrogatories propounded by Plaintiff to be answered by Defendant Reif, Question 18.

In the contempt proceeding, Reif testified on cross examination that the plea agreement reached at a meeting a few weeks before the colloquy between prosecution and defense counsel included not calling any of the defendants as witnesses in the Middle District in any proceeding. Transcript of Proceedings, at 29 *United States v. Drum*, (No. 83–096, June 22, 1982) However, Reif also testified that there had been no written plea agreement, memorandum, or notes that reflected the substance of that discussion; and that the transcripts of both Drum and Pearce's plea agreements did not include such a provision. Id. at 29, 30.

Ruch, the Assistant United States Attorney assigned to the Eastern District case involving Drum and Pearce, testified at this proceeding that while there was an understanding, not in writing, that Ruch would not call defendants to testify in the case Ruch was prosecuting, there was no agreement that defendants would not be called to testify in any other proceeding. *Id.* at 43. Ruch also testified that defense attorney Nasuti, who represented Corsetti, did the bulk of the negotiating and defense attorneys Simone and Reif then agreed to the terms of the plea. *Id.* at 43–44.

Ruch explained that while he had told Simone [Pearce's attorney], just before Pearce pled, that he did not intend to call Pearce as a witness, this intention referred only to the particular case at hand, whereby co-defendants Pearce and Drum would not have to testify against another defendant, Smith, who had at the time of the statement, not yet agreed to plead. When Simone stated to Judge Fullam that Ruch had told Simone that he didn't intend to call Pearce as a witness at Pearce's change of plea hearing, Ruch knew that Smith had, by then, agreed to plead guilty. Despite this knowledge, Ruch did not counter Simone's version of Ruch's statement. At the contempt proceeding, Ruch maintained that his statement had referred only to the prosecution of co-defendant Smith. Simone, Drum, and Pearce, at the time of Pearce's change of plea hearing, were not aware of Smith's decision to plead.

The transcripts of the plea proceedings establish that Judge Fullam clarified the scope of the plea agreement's non-testifying provision: he stated that it was binding as far as "this United States Attorney's Office" was concerned. The case was proceeding in the Eastern District of Pennsylvania, so "this ... office," by clear implication, refers only to that of the Eastern District of Pennsylvania.[3] Ruch testified in the contempt proceeding that he never agreed with any of the defendants' attorneys that Pearce, Drum, or Corsetti [the third co-defendant] would not be called as witnesses in the Middle District of Pennsylvania. Change of Plea Transcript, at 48,

---

3. Pearce contends that, in the context of related grand jury investigations in the Eastern and Middle Districts, Judge Fullam's reference to "this United States Attorney's Office" covered

the Middle as well as the Eastern District. *United ed States v. Pearce*, 792 F.2d 397, 398 n. 1 (3d. Cir.1986). This claim is not a reasonable inference form Judge Fullam's statement.

*United States v. Pearce.* Ruch acknowledged that the terms of the government's plea agreement with these three defendants were identical.

On March 16, 1983, Drum was called to testify before a grand jury in the Middle District of Pennsylvania. Drum was not represented by counsel, but Reif advised him by telephone that in his opinion, Drum "did not have to testify because of the agreement that had been made by Mr. Ruch. But in the event he was granted immunity that he should continue to take the Fifth, but however articulate for the grand jury that his reason for refusing to testify was because he felt that as part of his plea bargain, he did not have to." Transcript of Proceeding at 26, *United States v. Drum,* 569 F.Supp. 605, 607 (M.D.Pa.1983) *aff'd.* 735 F.2d 1348 (3d Cir.1984) (No. 83–096).

Drum, claiming that the plea agreement in the Eastern District provided that he would not be called to testify, refused to testify. To compel Drum to testify before the grand jury, the government applied for an immunity order. To support this, the government produced a letter from the United States Attorney's Office for the Eastern District of Pennsylvania stating that no prosecution would be brought against Drum in the Middle District, but not making any promise about not calling Drum as a grand jury witness. *United States v. Drum,* 569 F.Supp. 605, 607 (M.D. Pa.1983), *aff'd.* 735 F.2d 1348 (3d Cir.1984). The Court then signed the immunity order, directed Drum to testify and told him that if he did not testify he could be held in civil or criminal contempt. *Id.* Drum still refused to testify.

The government brought a criminal contempt charge against Drum based on this refusal. Trial on this charge was held on June 22, 1982, in the Middle District of Pennsylvania. Louis Ruch, the Assistant United States Attorney for the Eastern District of Pennsylvania who handled the Drum matter, and Judith Tyler, a Special Agent for the Federal Bureau of Investigation, testified for the government at the contempt trial. Mr. Ruch and Ms. Tyler testified that Mr. Drum's plea agreement did not include a provision excusing him from testifying in the Middle District. Reif testified to the contrary. The court found that the record of Pearce's change of plea hearing "*at best,* indicates that the Eastern District United States Attorney Office agreed not to call *Pearce* as a witness *in the Eastern District....* [T]his agreement, if any, applied solely to Pearce." *Id.* at 611 (italics in original). The court found Reif's testimony to the contrary to be "incredible." *Id.* at 611. The court explained its reasoning:

> ... During Drum's change of plea in the Eastern District Court before the Honorable John P. Fullam on September 17, 1982, Mr. Ruch, the Assistant United States Attorney handling the criminal action, informed the Court of Drum's plea agreement. Mr. Ruch did not include any provision regarding grand jury testimony. Nor did Drum's counsel insert any additional promise. Defendant's Exhibit 2. Judge Fullam specifically asked Drum whether there were any promises or agreements "other than the agreement which has just been stated by the prosecutor [Mr. Ruch]," to which Drum responded in the negative. *Id.* at 5.

*Id.* at 610. And concluded:

> Thus, we find that Drum's plea agreement in the Eastern District did not include a provision that Drum would not be called as a witness in the Middle District. We found the testimony of the Assistant United States Attorney handling the underlying criminal action, Louis J. Ruch, to be credible that no such agreement existed. Nor does the government's evidence reveal an ambiguous plea agreement. To the contrary, the plea agreement was quite clear—no uncertainties existed.

*Id.* at 611. Drum was then found guilty of criminal contempt and sentenced to two years to run consecutively with his five year sentence from the conviction in the Eastern District of Pennsylvania. The Court of Appeals affirmed Mr. Drum's

criminal contempt conviction. *United States v. Drum,* 735 F.2d 1348 (3d Cir. 1984).

After this conviction, Drum filed a petition in the Eastern and Middle Districts to correct and modify sentence pursuant to 28 U.S.C. § 2255. He argued that since his criminal contempt conviction in the Middle District violated the terms of his Eastern District plea, his two year sentence for the criminal contempt conviction should be reduced. The Eastern District found that Drum's arguments lacked merit, and denied his petition. Drum's comparable petition in the Middle District of Pennsylvania was also denied. Drum also applied in the Eastern District for specific performance of his plea agreement. Judge Fullam denied relief, finding that the plea agreement transcript shows that the agreement excusing the defendant's testimony applied only to the Philadelphia U.S. Attorney's Office.[4]

In the present case, Drum filed a complaint on August 1, 1985 in this court first against the three attorneys: Edward Reif, who represented Drum in the methamphetamine proceeding; Simone, who represented both Pearce, in that proceeding, and Drum, in the criminal contempt proceeding, and Nasuti, who represented Corsetti in the methamphetamine proceeding. The complaint alleged that these attorneys had misrepresented the terms of his plea agreement, which misrepresentations Drum relied on in refusing to testify before the grand jury, causing him to be convicted of criminal contempt. Original Complaint at ¶¶ 11–13.

Drum later amended the complaint to add as defendants those who had been involved in prosecuting the cases against Drum: Peter Vaira and Louis Ruch, formerly the United States Attorney and an Assistant United States Attorney, respectively, for the Eastern District of Pennsylvania; David Queens and David Shipman who had been the United States Attorney and the Assistant United States Attorney for the Middle District of Pennsylvania; and Judith Tyler and Clyde Whitson, Special Agents in the Federal Bureau of Investigation.

Plaintiff's complaint alleges that the federal defendants conspired either with the three private attorneys or among themselves either to misled Drum into believing that a provision that he would not be required to testify in the Middle District was part of the agreement or to mislead Judge Herman into believing that this provision did not exist, even though, in reality, it did.

The complaint alleges that the federal defendants conspired to deprive Drum of his constitutional rights by presenting perjured testimony in the contempt proceeding. Amended Complaint at ¶¶ 20, 21, and 24. The complaint alleges that Ruch and Tyler committed perjury during their testimony in the criminal contempt proceeding when they testified that the plea agreement in the Eastern District of Pennsylvania did not include the provision that Drum would not be called as a witness in the Middle District of Pennsylvania. *Id.* at ¶ 24. The complaint alleges that Mr. Shipman suborned such perjury, and Vaira and Queen allegedly were "aware of such testimony and poor conduct, but failed to intervene to correct the situation." *Id.*

II.

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted whenever judgment is appropriate as a matter of law and no genuine issue of material fact exists. In moving for summary judgment, the defendants have the burden of showing the absence of a genuine issue as to material fact, and for this purpose the documents considered outside the pleadings must be considered in the light most favorable to

---

**4.** Drum has still, however, not yet filed a claim to withdraw his guilty plea based on his misunderstanding of its terms, *see supra* note 2. Pearce also filed a motion for specific performance of his plea agreement, contending that he was promised that he would not be called as a witness in the Middle District. Judge Fullam, after a hearing on October 23, 1986, ruled from the bench denying Pearce's motion, finding that no promise was made to Pearce that he would not be called as a witness in the Middle District.

plaintiff, as the opposing party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

However, a party opposing a motion for summary judgment is not without obligations. Rule 56(e) states that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest on mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." And, nonmovants' affidavits must conform to Rule 56(e), which states in pertinent part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to all matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

█ Finally, conclusive assertions of ultimate fact are entitled to little weight when determining whether a nonmovant has shown a genuine issue of fact sufficient to overcome a summary judgment motion supported by complying affidavits. 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 2727 at pp. 157–59 (1983); *cf. Cummings v. Roberts*, 628 F.2d 1065, 1069 (8th Cir.1980).

The Supreme Court has recently delineated summary judgment standards. The Supreme Court explained that summary judgment must be granted, under Rule 56(c) "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing of an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* —— U.S. ——, ——, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273. I have allowed a generous time for discovery.

Drum thus must make a showing sufficient to establish the existence of the conspiracy. In *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the Supreme Court described the plaintiff's responsibility in a section 1983 action brought against a private party:

> The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulations, custom, or usage, of any State or Territory." This second element requires that the plaintiff show that the defendant acted "under color of law."

*Id.* at 150, 90 S.Ct. at 1604 (footnote omitted).

Since plaintiff has alleged the deprivation of a constitutional right, it remains for him to demonstrate facts indicating that the defendant acted under color of law in depriving him of his right to plead to the plea bargain of his choice.

█ It is well established that a private lawyer representing a client does not act under color of state law for purposes of § 1983 by virtue of being an officer of the court. *Polk County v. Dodson*, 454 U.S. 312, 324, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981); *Black v. Bayer*, 672 F.2d 309, 317 (3d Cir.) *cert. denied sub nom Stoica v. Stewart*, 459 U.S. 916, 103 S.Ct. 230, 74 L.Ed.2d 182 (1982); *Henderson v. Fisher*, 631 F.2d 1115, 1119 (3d Cir.1980) (per curiam); *Arment v. Commonwealth National Bank*, 505 F.Supp. 911, 913 (E.D.Pa.

1981). Thus, the private attorneys cannot be held liable under section 1983 for unilateral actions which they took on behalf of their clients as their private attorneys.

■ The requirement of action under color of law is satisfied, however, when a private person willfully participates in joint action with a state official. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); *Black, supra* at 320. This is true even when the state official is immune from civil liability. *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), (private citizen conspiring with state court judge to deprive a citizen of his constitutional rights may be held liable under section 1983 notwithstanding the judge's absolute immunity from suit).

Thus, plaintiff must demonstrate a genuine issue of material fact that there existed between the private defendant and the state official an understanding, agreement, or conspiracy to deprive the plaintiff of a federal right. He must show a genuine factual issue of a combination, agreement, or understanding among the defendants. *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir.1974). These must also be a genuine factual issue that the defendants plotted, planned, or conspired together to carry out the chain of events. *Id.* Agreement to commit an unlawful act lies at the heart of a civil conspiracy. *Id.* Plaintiff cannot expect to rely upon bare assertion, conclusory allegations, or suspicions, regarding the conspiracy, to resist defendant's summary judgment motion. *Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981).

Demonstration of a genuine issue of material fact is necessary to ensure that civil rights actions are not brought frivolously and to enable the court to assess whether the action may be meritorious. *See United States v. City of Philadelphia*, 644 F.2d 187, 204 (3rd Cir.1980) (quoting *Valley v. Maule*, 297 F.Supp. 958, 960–61 (D.Conn 1968). Broad or conclusory allegations of a conspiracy are insufficient. *Hauptmann v. Wilentz*, 570 F.Supp. 351, 374 (D.N.J. 1983), *aff'd.* 770 F.2d 1070 (3d Cir.1985);

*Glaros v. Perse*, 628 F.2d 679, 684–85 (1st Cir.1980); *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977).

Since the question of the existence of any genuine issues of material fact depends in part on whether collateral estoppel bars plaintiff from relitigating the facts he now claims are at issue in this conspiracy action, I will first consider the collateral estoppel issue.

### III. COLLATERAL ESTOPPEL

The federal defendants assert that plaintiff's claim is barred by collateral estoppel because the truthfulness of their allegedly perjured testimony, which Drum complains led to his criminal conviction, has already been determined by a federal court. The private defendants assert that plaintiff's claim is barred by collateral estoppel because the factual issue as to what his plea agreement was has already been litigated before Judge Herman and Judge Fullam, and both Judges ruled that no agreement precluding plaintiff from testifying in the Western District ever existed. Plaintiff denies that the doctrine of collateral estoppel bars his litigation of his claim. He asserts that the issue in this case is not whether the agreement existed, but the defendants' conspiracy to lead the plaintiff into believing that the provision existed and thus obtaining his guilty plea causing him to assert the missing provision in the Middle District as protection from the order compelling him to testify before the grand jury. Plaintiff thus contends that he is raising a new issue. Plaintiff contends that the three claims, that is, the claim of perjured testimony, the factual issue as to the terms of his plea agreement, and the conspiracy to mislead Drum as to the terms of his plea agreement, are distinct.

■ Collateral estoppel bars litigating a claim if the following criteria are met:

(a) the issue decided in the prior adjudication is identical with the one presented in the later action;

(b) there is a final judgment on the merits;

(c) the party against whom the doctrine is asserted was a party or in privity with a party to the other action;

(d) the party against whom it is asserted had a full and fair opportunity to litigate the issue in question in the prior action; and

(e) the issue decided was essential to the judgment.

*Kelly v. Warminster Township Board of Supervisors,* 512 F.Supp. 658, 664 (E.D.Pa. 1981), *aff'd. mem.,* 681 F.2d 806 (3d Cir.) (*cert. denied,* 459 U.S. 834, 103 S.Ct. 76, 74 L.Ed.2d 74 (1982); *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). *See also Kauffman v. Moss,* 420 U.S. 1270, 1274 (3d Cir.) *cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970) (issues essential to guilty verdict must be treated as having been determined by the judgment).

■ Collateral estoppel bars a plaintiff from bringing a civil rights action under 42 U.S.C. § 1983 if, in a prior criminal proceeding, the court specifically determined the issue in question. *Allen v. McCurry,* 449 U.S. 90, 105, 101 S.Ct. 411, 420, 66 L.Ed.2d 308 (1980); *see Switlik v. Hardwicke Co.,* 651 F.2d 852, 859 (3d Cir.), *cert. denied,* 454 U.S. 1064, 102 S.Ct. 614, 70 L.Ed.2d 601 (1981). The issue will not be relitigated in a civil rights action in federal court, even if that decision in the criminal proceeding may have been erroneous. *See Allen, supra,* 449 U.S. at 101, 101 S.Ct. at 418; *Switlik, supra,* at 858, n. 4. ("The existence of a factual basis supporting the state decision is not relevant to the issue whether federal claims are barred.) The Supreme Court and other courts have explained that *res judicata* and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication. *Allen, supra* 449 U.S. at 94, 101 S.Ct. at 414–15.

■ Regarding Drum's claim that the federal defendants conspired to commit or suborn perjury, collateral estoppel applies. The Court has said that if the question now raised in a civil suit was " 'distinctly put in issue and directly determined' " in the criminal prosecution, such a question is barred from litigation. *Kauffman v. Moss,* 420 F.2d 1270, 1274 (3d Cir.) *cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970), *quoting Emich Motors v. General Motors Corp.,* 340 U.S. 558, 569, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1951). *Kauffman* relied on the Supreme Court's statement in *Emich* that, " 'in the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment.' " *Id.* The plaintiff there alleged that the defendants—a District Attorney and three law enforcement officers—conspired to secure his criminal conviction by the knowing use of perjured testimony. The *Kauffman* plaintiff had argued that the Judge's decision addressed only the veracity of the testimony, not the claim of conspiracy to commit perjury. The Court stated that, if it appears from an examination of the prior trial record that the veracity of the witnesses had adequately put in issue, and that the general guilty verdict was based on the acceptance of the truth of the alleged perjured testimony, then the later claim of perjury would be barred. *Kauffman, supra* at 1275.

In *Kauffman,* the Court explained that: While it is clear that the conspiracy issue could not have been decided by appellant's prior criminal conviction, nevertheless, if appellant is *barred from litigating the existence* of perjury itself, then he has *no right to recover for conspiracy to commit or suborn perjury.* If appellant is unable to show that perjury was actually committed, then he has suffered no injury and is entitled to no redress.

*Id.* at 1275 n. 11 (emphasis added). Thus, in *Kauffman,* the Court noted that alleging a conspiracy to commit perjury and subordination of perjury "would not in itself be sufficient to avoid ... summary judgment for appellees on the ground of collateral estoppel." *Id.* According to *Kauffman,* then, if Drum is collaterally

estopped from litigating his perjury claim, then he is barred from litigating his conspiracy to commit perjury claim.

The criminal contempt proceeding's record shows that the truthfulness of the allegedly perjured testimony was determined in that proceeding. The same record also shows that the credibility of such testimony was essential to the court's determination. The Court's opinion states that Judge Herman found Ruch's testimony to be "credible that no such agreement [not to have to testify in the Middle District] existed." *United States v. Drum*, 569 F.Supp. 605, 611 (M.D.Pa.1983). The Judge found the contrary testimony of Reif to be "incredible." *Id.* Drum was clearly a party to this action, and had a full and fair opportunity to litigate the existence of the agreement. Under *Kauffman*, since the testimony on the non-existence of an agreement that Drum would not have to testify in the Middle District was found to be credible, Drum is estopped from alleging both that Ruch committed perjury, and that the defendants conspired to commit or suborn perjury. Similarly, since Judge Herman found that the agreement did not exist, collateral estoppel bars the plaintiff from relitigating the existence of the agreement.

■ However, Drum's claim that the federal and private defendants conspired to mislead him as to the terms of his plea agreement, was not directly put in issue in Drum's contempt proceeding. Judge Herman decided the terms of the plea agreement, but not what Drum believed the plea agreement terms to be.[5] Thus, collateral estoppel does not bar him from litigating *this* claim. He may not, nevertheless, litigate this conspiracy claim by disputing those claims that were already decided in

Judge Herman's criminal contempt proceeding, for they are, as discussed above, barred by collateral estoppel.

## IV. NONEXISTENCE OF GENUINE ISSUES OF MATERIAL FACTS

■ Drum's argument for the existence of a conspiracy is as follows: the plea agreement that Drum understood himself as agreeing to provided that he would not have to testify in any court proceeding in the Middle District. Judge Herman, in *United States v. Drum*, 569 F.Supp. 605 (M.D.Pa.1983), found that this plea agreement did not contain that term. That implies, for Drum, his misunderstanding of the terms of his plea agreement when he agreed to it was due to a conspiracy of all those involved in the negotiations and definition of the plea agreement to mislead Drum as to its terms. This chain of logic, however, does not support Drum's claim that genuine issues of material fact exist regarding a conspiracy between the federal and private defendants to deprive him of the plea agreement of his choice.[6]

Drum has not set forth facts showing the essential elements of a conspiracy. A failure of proof concerning an essential element of Drum's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett*, — U.S. —, —, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). The essential elements of Drum's case include his showing that the private parties willfully participated in joint action with the federal defendants to deprive him of the right to plead to the plea agreement of his choice. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150–52, 90 S.Ct. 1598, 1604–06, 26 L.Ed.2d 142 (1970). These facts must en-

---

5. *See United States v. Drum*, 569 F.Supp. 605, 611 (M.D.Pa.1983).

6. Drum has not made a malpractice or negligence claim against any defendant. In my first Order in this case of September 24, 1985, I stated:

Plaintiff has not alleged how these three defendants violated his rights under the Constitution or laws of the United States. If this is a malpractice claim for failure to incorporate in

the plea agreement an 'agreed' term that plaintiff would not have to testify in any other proceeding, it must be brought in the state courts against a proper party, absent federal jurisdiction based on diversity of citizenship.

I suggested, in effect, that plaintiff might wish to pursue a malpractice claim in state court, but he has apparently not yet done so, even though this record demonstrates he knows how to start a lawsuit.

able a factfinder to find an agreement or understanding among the defendants. *Ammlung v. City of Chester,* 494 F.2d 811, 814 (3d Cir.1974). Speculative claims are insufficient. *Celotex,* —— U.S. at ——, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. *See also Philadelphia Printing, Etc. v. International Paper, Etc.,* 648 F.2d 900, 903 (3d Cir.1981) (bald assertions of speculative considerations without supportive findings in the record do not create genuine issue of material fact).

Plaintiff has not produced, after reasonable opportunity for discovery, any evidence of his claim that the federal defendants conspired to deprive him of his civil rights. Plaintiff alleges that defendants Shipman and Ruch committed perjury by testifying at Drum's criminal contempt trial that the plea agreement in the Eastern District did not include a provision that Drum would not be called as a witness in the Middle District, and that the remaining federal defendants knew of the alleged perjury but did nothing to stop it. However, collateral estoppel bars plaintiff from litigating these issues again, and thus from raising them as an issue of material fact against these summary judgment motions.

Drum's affidavits and papers submitted in response to defendants' summary judgment papers do not put forth facts from which a jury could infer that the private defendants willfully participated in joint action with the federal defendants to deprive him of the right to plead to the plea bargain of his choice. Drum has provided no circumstantial or other evidence of the fact essential to a conspiracy—that there was a meeting of the minds as to this goal.

There is no evidence of a conspiracy in Drum's assertion that "there is some question as to the precise elements of the plea bargain agreement and plaintiff's understanding thereof." Nor is there evidence to raise a genuine factual issue about a conspiracy in Drum's claim: "The issue here is not the existence of the agreement, but the defendants' conspiracy to lead the plaintiff into believing that the provision existed and thus obtaining his guilty plea."

*Plaintiff's Reply to Federal Defendants' Motion for Summary Judgment* at 5. Without a genuine factual issue to support the conspiracy claim between the federal and private defendants, Drum fails to state a *Bivens* or § 1983 cause of action. A question as to the elements of the plea agreement is barred by collateral estoppel. An issue as to plaintiff's understanding of this does not demonstrate any state action for purposes of the *Bivens* action.

Nor does his claim, that since the federal defendants were involved in the plea negotiations with private defendants, and therefore "had the opportunity to conspire with [the private] defendants or among themselves to either mislead the plaintiff ... or in mislead [sic] Judge Herman into believing that the provision did not exist even though, in reality, it did," suffice to meet Drum's burden to make a sufficient showing of a conspiracy. *Celotex,* —— U.S. at ——, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

No material fact demonstrates the meeting of the minds of the parties to mislead Drum. Allegations of an opportunity to conspire, or of the precise elements of the plea agreements and plaintiff's understanding thereof, do not set forth the *requisite* facts to create a genuine issue for trial. Plaintiff has not overcome the federal defendants' denial of any such conspiracy affidavits.

All Drum shows is an alleged misunderstanding of the terms of his plea agreement. This demonstrates the *absence* of a meeting of the minds of the parties involved in the plea negotiations regarding the specific terms of the plea agreement.

Drum alleges that Ruch may have told Simone that the criminal defendants would not be called as witnesses before the grand jury, but lacked the authority to make such a promise. The allegation is speculative, but, even if Drum could prove it, it shows only an absence of a meeting of Ruch and Simone's minds.

Drum also alleges that alternatively the federal defendants did not communicate any information concerning the Middle District investigation and grand jury proceed-

ings to plaintiff or his counsel prior to the entry of the plaintiff's guilty plea on September 17, 1982.[7] *Plaintiff's Answer to Federal Defendants' Motion For Summary Judgment* at 10. Drum also baldly claims that Shipman told Ruch that Drum was expected to be called as a witness before the Middle District grand jury, and the Middle District United States Attorney's Office never agreed otherwise, yet Ruch failed to inform Reif of this. *Id.* Such failure of communication is again evidence of an absence of a meeting of the minds regarding his testifying in the Middle District, not a predicate for a reasonable interference of conspiracy.

Plaintiff claims that Rief learned of Ruch's statement that Ruch did not intend to call Pearce as a witness for either a trial or before the grand jury from Pearce, who had in turn learned this from Simone. This fact is of no value to Drum's position. It is not within his personal knowledge. It is again suggestive not of a meeting of the parties' minds, but of a lack of clarity as to the terms of the plea agreement.

Drum also claims Reif indicated that those negotiating the plea bargain agreement had agreed at an early stage before the September change of plea hearing that Drum would not have to testify to any proceeding involving the alleged illegal activities. However, this does not address the fact, supported by defendant's affidavits, that the plea bargain was not made until just before the parties plead, after the prosecutors had come up with additional evidence. Reif's personal knowledge of the plea agreement, therefore, was limited to the earlier stage negotiations, and what he was told by those present at Pearce's change of plea hearing.

Drum's failure to raise a genuine factual issue as to joint action between federal and private defendants to mislead him, also defeats his federal claims against Simone, Reif, and Nasuti. Drum provides only speculative allegations of a conspiracy, i.e., that these defendants' involvement in the plea negotiations provided them with an opportunity to conspire. Collateral estoppel bars Drum from asserting that Simone failed to inform Judge Herman of perjury on the part of the government officials concerning the provisions of the plea agreement, since Judge Herman found Ruch's statements to be credible.

In a light most favorable to the plaintiff, the facts Drum sets forth to show the existence of a genuine issue of fact are not those from which a jury could reasonably infer the existence of a conspiracy; rather, the inference would be of a misunderstanding in the negotiators' minds as to the specific terms of the plea agreement. While such facts may tend to show malpractice on the part of some of the defendants, such an action is not now before the Court. Drum states he told Simone prior to pleading guilty to include the provision in the plea agreement that he would not be required to testify in the Middle District. Simone denies that he discussed the matter with Drum, pointing out that Edward Reif then represented Drum; Simone also denies that he communicated with Ruch regarding such a provision. While Simone and Drum do present different versions of this issue, even if it were found that Drum *had* told *his* counsel to include such a provision, but counsel had failed to do so, this is probative not of a conspiracy, but may, as Simone himself suggested, be probative of negligent conduct on the part of the defendant's attorney.

Likewise, the fact that Reif understood that the plea bargain agreement included the agreement that plaintiff would not have to testify in proceedings involving the alleged illegal activity in the Middle District does not tend to show joint action between Reif and the federal defendants. It shows only a lack of any action, joint or otherwise, to clarify the terms in the plea agreement. Reif was not even present during Pearce's plea, the terms of which were incorporated into Drum's agreement.

Nasuti's affidavit likewise demonstrates a lack of joint action. Nasuti's affidavit

---

7. The federal defendants do not deny this, but maintain that they were not obliged to do so.

states that Ruch informed Nasuti that the U.S. Attorney for the Middle District of Pennsylvania intended to obtain indictments against the co-defendants for similar drug related offenses committed in that district. This information led Nasuti to engage in plea discussions with Mr. Ruch. As a result of Nasuti's discussions with Ruch on September 13, a plea agreement was reached, which did not preclude the government from calling his client as a witness before the grand jury in the Middle District of Pennsylvania. Nasuti had communicated the deal he had reached for his client with the other counsel. The other counsel believed that they would be able to obtain the same deal for their clients. Drum's version does controvert Nasuti's.

According to Drum, his attorney, along with Pearce's attorney, himself, and Pearce, discussed the possibility of a plea from September 14 to September 16, and the possibility of being called as a grand jury witnesses; at that point, Drum and Pearce agreed to a plea that included the understanding that they would not be called as witnesses in the Middle District. However, plaintiff sets forth no facts that his attorney could or did make a deal on these terms to which his client agreed.

Plaintiff claims that any misunderstanding of the plea agreement was caused by Nasuti's deliberate course of action. However, Drum fails to establish facts from which such a deliberate course of action could be inferred. While Drum refuses to admit that he has no proof of Nasuti's impropriety, he supports this denial only by pointing out that Nasuti was involved in the plea discussions. Drum has failed to provide any circumstantial evidence from which Nasuti's involvement in a conspiracy to mislead Drum could be inferred.

In response to Simone's summary judgment motion, Drum asserts that "on September 16, 1983, Mr. Simone is on the record telling plaintiff that he would not have to testify in the *Middle* District of Pennsylvania." However, an examination of Pearce's change of plea hearing reveals no such statement on the record—only that

Pearce, and, according to Drum, by implication, Drum, would not have to testify in the *Eastern* District. Change of Plea Transcript at 7. *United States v. Pearce,* Crim. No. 82–173–2 (Sept. 16, 1982). Simone's affidavit likewise denies that he ever told Drum prior to his pleading guilty that he would not be required to testify in the Middle District. Drum has not set forth any facts to support his allegations to the contrary, nor to counter Simone's statement in his affidavit that Simone did not communicate with Ruch about Drum regarding a provision in the plea agreement that Drum would not be required to testify in the Middle District. The absence of a genuine issue of fact concerning the existence of a conspiracy to mislead Drum as to the terms of his plea agreement is therefore a proper basis for granting summary judgment as to all defendants.

## V. STATUTE OF LIMITATIONS

[9–12] In civil rights actions under 42 U.S.C. § 1983, federal courts must ascertain the underlying cause of action under state law and apply the limitation period which the state would apply if the action had been brought in state court. *Jennings v. Shuman,* 567 F.2d 1213, 1216 (3d Cir. 1977). A *Bivens* type suit is a federal counterpart of 42 U.S.C. § 1983. *Paton v. La Prade,* 524 F.2d 862, 871 (3d Cir.1975). Since *Bivens* type actions and § 1983 actions rest on similar policies, courts look to the statute of limitations applied in a § 1983 case, to determine the appropriate statute in a *Bivens* type case. *See McClaim v. Barry,* 697 F.2d 366, 375 n. 8 (D.C.Cir.1983); *see also Doe v. District of Columbia,* 697 F.2d 1115, 1123 (D.C.Cir. 1983) (bodies of law relating to *Bivens* and § 1983 litigation have been associated in many respects). The proper characterization of actions under 42 U.S.C. § 1983 is a question of federal law. *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). The appropriate statute of limitations in such suits is the state statute for personal injury actions. *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85

L.Ed.2d 254 (1985). Pennsylvania's two year statute of limitations for personal injuries, 42 Pa.C.S. § 5524, is applicable to § 1983 claims. *Smith v. Philadelphia*, 764 F.2d 188, 194 (3d Cir.), *cert. denied*, — U.S. ——, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985). Neither the plaintiff nor the defendants dispute this.

▉▉▉▉ They do, however, dispute the appropriate accrual date for this two year limit. Federal law determines the date of accrual of a section 1983 cause of action. *Deary v. Three Un-Named Police Officers*, 746 F.2d 185, 197 n. 16 (3d Cir.1984). A plaintiff's civil rights cause of action accrues when the plaintiff "knew or had reason to know of the injury that constitutes the basis of this action." *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir.1982) (per curiam); *see also Deary, supra*, at 197, n. 16. (claim of malicious prosecution accrues on date that criminal proceedings were resolved in plaintiff's favor). The question, under *Sandutch*, is when could Drum by the exercise of due diligence, have had the reason to know of the injury that is the basis of his cause of action. *Deary, supra*, at 194 n. 9. *See also Sandutch* at 254 (record establishes as a matter of law that Sandutch had reason to know of the alleged conspiracy to secure false testimony when he knew of Mastrota's recantation of his incriminating evidence).

Drum claims that the accrual date was when the Court of Appeals affirmed his criminal conviction on May 18, 1984. The federal defendants claim it was the date of the alleged perjury, in June of 1983; and private defendants Reif and Nasuti likewise claim it accrued when the criminal contempt proceeding was held, in June of 1983. Plaintiff filed his complaint against the private attorneys on August 1, 1985; he filed his amended complaint, which included the federal defendants, on January 1, 1986.

▉▉▉▉ While in a conspiracy, the statute of limitations begins to run from each overt act causing damages, *Ammlung v. City of Chester*, 494 F.2d 811, 814–5 (3d Cir.1974), in making this assessment courts distinguish between continuing unlawful acts, and continued ill effects from an original violation. In *Sandutch*, the Court found that the alleged continuing ill effects from preconviction acts did not constitute a continuing tort for purposes of the accrual date. *Sandutch, supra*, at 254. Thus, the date of accrual began when the plaintiff had reason to know of the alleged false testimony in his case. The Court held that "a 'continuing violation is occasioned by continual unlawful acts, not continued ill effects from an original violation.'" *Sandutch, supra*, at 254 quoting *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir.1981).

▉▉▉▉ Based on this analysis, I must reject plaintiff's argument that his claim was not ripe until the Court of Appeals denied his appeal from his criminal contempt conviction in the Middle District, on May 18, 1984, when he alleges he ultimately sustained his damage, since he was then forced to serve an additional two years. As in *Sandutch*, the alleged continuing ill effects from preconviction acts do not constitute a continuing tort. *Id. See also Gaito v. Strauss*, 249 F.Supp. 923, 932 (W.D.Pa.), *aff'd.*, 368 F.2d 787 (3d Cir.1966) (date of accrual is achievement of goal of conspiracy, which was last overt act effectuating plaintiff's imprisonment, thus not later than plaintiff's sentencing; allegedly continuous and successful efforts by defendants since then can be regarded as elements of continuing damage accruing from culmination of alleged conspiracy in sentencing). Thus, the last act which Drum complains of causing his injury would have been *during* his criminal contempt proceedings, in June, 1983, when he "knew" from Reif's testimony of the conspiracy he claims. It was then that the statute of limitations accrued.

▉▉▉▉ Nor can plaintiff argue that the reason he failed to file his § 1983 action was that the same issues were pending in another proceeding. *Bailey v. Ness*, 733 F.2d 279, 283 (3d Cir.1984). Rather, in such a situation the Court would stay the

civil rights proceeding until the criminal proceedings had run their course. *Id.* Thus, the statute of limitations also bars plaintiff's claims.

## VI. PROSECUTORIAL IMMUNITY

[19, 20] Federal defendants set forth the additional ground for summary judgment that they are absolutely immune from liability for their testimony in a judicial proceeding. The Supreme Court has said that, for purposes of immunity law, no distinction between suits brought against state officials under § 1983 and those brought under the Constitution against federal officials should be drawn. *Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2909–10, 57 L.Ed.2d 895 (1978). *See also Paton v. LaPrade,* 524 F.2d 862 (3d Cir.1975).[8] Prosecutors enjoy absolute immunity from damage suits under § 1983 for activities "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). In *Brawer v. Horowitz,* 535 F.2d 830, 834 (3d Cir.1976) the court stated that the immunity accorded to state prosecutors in *Imbler* should extend to federal prosecutors. Prosecutorial immunity, however, does not apply to actions taken by prosecutors "clearly outside of their jurisdiction." *Bauers v. Heisel,* 361 F.2d 581, 590 (3d Cir.) (en banc), *cert. denied,* 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457 (1967). Within these limits, a prosecutor's immunity extends to actions taken in the initiation of a prosecution and the presentation of the prosecutor's case. *Imbler, supra,* 424 U.S. at 431, 96 S.Ct. at 995–96; *Ross v. Meagan,* 638 F.2d 646, 648 (3d Cir.1981) (per curiam). In *Imbler,* this immunity was extended to a prosecutor in a suit alleging that the prose-

cutor knowingly used perjured testimony. The public policy considerations supporting common law witness immunity apply equally to claims brought against witnesses under *Bivens. Brawer v. Horowitz,* 535 F.2d 830, 837 (3d Cir.1976). The *Imbler* Court noted that potential liability would divert the prosecutor's attention and energy "from the pressing duty of enforcing criminal law." *Imbler, supra,* 424 U.S. at 425, 96 S.Ct. at 992.[9]

■ The Court has held that a prosecutor is entitled to absolute immunity while performing his official duties, "as an officer of the court, even if, in the performance of those duties, he is motivated by a corrupt or illegal intention." *Jennings v. Schuman,* 567 F.2d 1213, 1221–22 (3d Cir. 1977). Thus, the law establishes that defendants are absolutely immune from liability for their testimony in his criminal contempt proceeding. The only way that Drum can recover against the federal defendants, is if he can show that they acted outside the scope of their official duties. Drum fails to set forth any facts from which a jury could infer that the federal defendants acted outside the scope of their official duties.

In his response to defendants' motions, Drum simply asserts that the element of perjury is but one aspect of the conspiracy, that the federal defendants either misled him into believing that he would not be required to testify in the Middle District or that the plea bargain did exist, and that the federal defendants conspired to prevent the plaintiff from receiving the benefits of said agreement. Given the absence of any factual showing that the federal defendants acted outside the scope of their official

8. The Supreme Court has said that "there is no basis for according to federal officials a higher degree of immunity from liability when sued for a constitutional infringement as authorized by *Bivens* than is accorded state officials when sued for the identical violation under § 1983." *Butz v. Economou,* 438 U.S. 478, 500, 98 S.Ct. 2894, 2907, 57 L.Ed.2d 895 (1978).

9. In *Briscoe v. Lalute,* 460 U.S. 325, 330–332, 103 S.Ct. 1108, 1113–14, 75 L.Ed.2d 96, the Supreme Court, tracing the historical origins of the policy granting immunity to parties and witnesses from subsequent damage liability for their testimony in judicial proceedings, noted that in some American decisions, "[t]he plaintiff could not recover even if the witness knew the statements were false and made therein with malice." *Id.* at 332, 103 S.Ct. at 1113–14.

duties, the federal defendants' are protected by their immunity.

The defendants' motions for summary judgment are accordingly granted.