Donald BERGER, Barbara Dallas,
William Kier, Jr., Rose Saxman
and Robert Wagner, Plaintiffs,

v.

EDGEWATER CORPORATION d/b/a
Edgewater Steel Company,
Defendant.

Civ. A. No. 88–2184.

United States District Court,
W.D. Pennsylvania.

Dec. 23, 1991.

David F. Weiner, Pittsburgh, Pa., for plaintiff.

Ralph A. Finizio, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

LEWIS, District Judge.

Plaintiffs were employees of defendant Edgewater Steel Company ("Edgewater Steel") in January, 1987, when the president of Edgewater Steel sent a letter to all employees notifying them of a change in retirement benefits. Edgewater Steel had decided to eliminate a "special payment" made to certain employees upon retirement and a $300 per month pension supplement paid to those employees who qualified under the company's "70/80" retirement plan. The changes would be effective on February 1, 1987.

After receiving these letters, the five plaintiffs, who ranged in age from 49 to 64, all retired before February 1, 1987. Because they retired earlier than they had intended to, plaintiffs received less benefits than they would have had they remained Edgewater Steel employees longer. They later sued the company, alleging violations of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA") (at a related case, Civil Action No. 87–2250) and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (the "ADEA") (this case).

The companion ERISA case has been fully litigated. *See Berger v. Edgewater Steel Co.*, 911 F.2d 911 (3d Cir.1990), *cert. denied,* ── U.S. ──, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991). Before this court are plaintiffs' and defendant's motions for summary judgment.[1] Because this case,

---

**1.** In December, 1989, the judge to whom this case was previously assigned denied a motion

despite plaintiffs' claims to the contrary, necessarily involves examination of defendant's intent in amending its pension plan, and because no discriminatory intent exists, defendant's motion will be granted and plaintiffs' motion will be denied.

## DISCUSSION

The ADEA provides generally that "[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...." 29 U.S.C. § 623(a).

The prohibition of discrimination against employees based upon age is subject to some exceptions. In particular, it is not unlawful for an employer "to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual, and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual ... because of the age of such individual." ADEA § 4(f)(2), 29 U.S.C. § 623(f)(2).[2]

### I. The *Betts* Test

■ The Supreme Court examined § 4(f)(2) in *Public Employees Retirement System of Ohio v. Betts*, 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989). For an employer's action to fall within § 4(f)(2), (1) it must have been taken "to observe the terms of the ·plan;" (2) the plan must be *bona fide* (exist and pay benefits); and (3) the plan must be either a retirement, pension or insurance plan. *Betts*, 492 U.S. at 166, 109 S.Ct. at 2860. An employer is entitled to § 4(f)(2) protection if its action meets these three elements, unless the action was a subterfuge to evade the purposes of the ADEA. *Id.*

■ The term "subterfuge" in this context means "a scheme, plan, stratagem, or artifice of evasion." *Betts*, 492 U.S. at 167, 109 S.Ct. at 2861. Thus, when an employee challenges an employer's action which meets the above-described three-part test as a subterfuge to evade the purposes of the ADEA, "the employee bears the burden of proving that the discriminatory plan provision actually was intended to serve the purpose of discriminating in some non-fringe-benefit aspect of the employment relation." *Id.* at 181, 109 S.Ct. at 2868.

In this case, Edgewater Steel argues that its amending its pension plan meets the three-part test described above. At oral argument, plaintiffs' counsel in fact conceded that the actions at issue come within the three-part test.

### II. Plaintiffs' Assertion That They Need Not Show Intent

■ Despite plaintiffs' concurrence that Edgewater Steel's actions fall within the initial language of § 4(f)(2), plaintiffs assert that they need not prove intent. In fact, plaintiffs do not even attempt to prove intent. At oral argument, plaintiffs' counsel informed the court that plaintiffs do not assert that Edgewater Steel intended to

---

for summary judgment filed by the defendant. The opinion issued at that time contained language upon which plaintiffs based a motion for summary judgment, filed immediately after the issuance of the opinion. Defendant also reacted to the ruling, petitioning the court for reconsideration and for leave to reassert its motion because the court had ruled that plaintiffs were pursuing a different type of discrimination case than defendant originally thought. This court indicated that it would reconsider the matter and determine whether summary judgment was appropriate based upon defendant's newly-asserted arguments.

**2.** Section 4(f)(2), 29 U.S.C. § 623(f)(2) was amended in October, 1990, pursuant to the Older Workers Benefit Protection Act. The historical and statutory notes describing the amendments indicate that the changes to § 4(f)(2) are effective only with regard to any employee benefit established or modified on or after the date of the act (October 16, 1990) and to conduct occurring more than 180 days after October 16, 1990, however. Therefore, this version of § 4(f)(2), which predates the amendments, applies in this case. *See Equal Employment Opportunity Comm'n v. Westinghouse Electric Corp.*, 925 F.2d 619, 622 n. 2 (3d Cir.1991).

discriminate against them. Plaintiffs' counsel argues that this is a disparate impact case, so plaintiffs need not show intent.

▪ Plaintiffs apparently argue that defendant is not entitled to § 4(f)(2) protection because its plan requires or permits involuntary retirement based upon age in contravention of the last clause of § 4(f)(2). The exception providing that no seniority system or employee benefit plan shall require or permit involuntary retirement because of age was added to § 4(f)(2) in 1978. As a result of these amendments, "§ 4(f)(2) cannot be used to justify forced retirement on account of age." *Betts*, 492 U.S. at 166 n. 2, 109 S.Ct. at 2860 n. 2. This section "proscribes the use of employee benefit plans as a means of forcing older workers off the job." *Westinghouse*, 925 F.2d at 634. It is not intended to reach situations in which laid-off employees had the option either to take early retirement or to remain with the company on layoff when layoff status was unrelated to age, for example. *Id.*

An inquiry into whether a defendant's actions were a "means of forcing older workers off the job" seemingly necessitates an examination of intent. After all, the test for involuntary retirement is "extremely rigorous." *Id.* Without evidence that Edgewater Steel was intending or hoping that its actions would result in a reduction in workforce, and, in fact, in the face of evidence to the contrary, the test cannot be met.[3]

Instead, because the actions about which plaintiffs complain meet the three-part test, Edgewater Steel's actions are valid under § 4(f)(2) unless the plaintiffs can show an intent on its part to discriminate against them in some non-fringe-benefit aspect of their employment. Plaintiffs of course *are* alleging discrimination in a non-fringe-benefit aspect of employment—they are claiming that Edgewater Steel discriminated against them by constructively discharging them, or forcing them to resign.[4] They have not advanced, and, based upon the record before the court, cannot advance any evidence of the requisite intent, however.

III. Plaintiffs Cannot Show Intent

▪ This court is faced with the same record upon which the United States Court of Appeals for the Third Circuit based its conclusions regarding defendant's intent in the ERISA case referred to earlier. The cases were consolidated for discovery. The parties have indicated that no additional discovery has been conducted, and no additional evidence in the form of affidavits or documents has been submitted. Based upon these facts and rulings, the doctrine of collateral estoppel bars plaintiffs from arguing that Edgewater Steel intended to force them to retire by amending its plan as it did.[5]

3. Absent the passage of the Civil Rights Act of 1991, this court could have bolstered its ruling by noting that, even if plaintiffs could assert a "disparate impact" case, plaintiffs could not survive defendant's motion for summary judgment on the record before this court. Defendant has asserted certain economic justifications for its amendment of its plan. Plaintiffs' counsel agreed at oral argument that defendant had amended its plan for the economic reasons stated. Certainly in disparate impact cases brought under pre–1991 Civil Rights Act law, economic justifications sufficed to demonstrate business necessity and thus to shift the burden back to plaintiffs to demonstrate that the employer had available less discriminatory methods to meet its business goal or that its stated economic reason was a pretext for discrimination. *See Wards Cove Packing Co. v. Antonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). The court expresses no opinion on the effect of the Civil Rights Act of 1991 upon *Wards Cove.* Nor does it express an opinion on the retroactivity of the Civil Rights Act of 1991.

4. Plaintiffs distinguish *Betts* on this ground. That is, they claim that this case differs from *Betts* because the plaintiff in *Betts* claimed discrimination with regard to a fringe benefit. In this case, they are claiming discrimination with regard to a non-fringe-benefit matter (termination of employment). It is true that such a distinction makes this a different case factually from *Betts.* It does not mean that the legal principle announced in *Betts* does not apply.

5. Plaintiffs indicated at oral argument that they do not even seek to prove intent. Nevertheless, the court will examine the collateral estoppel argument because the Third Circuit findings would also be material to and dispositive of any examination of the last clause of § 4(f)(2). *See infra* Section II.

■ The doctrine of collateral estoppel applies to bar a claim if the following criteria are met:

(a) The issue decided in the prior adjudication is identical with the one presented in the later action;

(b) There is a final judgment on the merits;

(c) The party against whom the doctrine is asserted was a party or in privity with a party to the other action;

(d) The party against whom it is asserted had a full and fair opportunity to litigate the issue in question in the prior action; and

(e) The issue decided was essential to the judgment.

*Drum v. Nasuti,* 648 F.Supp. 888, 897–898 (E.D.Pa.1986), *aff'd,* 831 F.2d 286 (3d Cir. 1987) (citations omitted).

Clearly, the second and third factors are present. The other three factors are also met.

### A. *Identity of Issue*

Because of *Betts,* the dispositive issue in this case under the ADEA is whether Edgewater Steel's amendment of its pension plan was intended to discriminate against the plaintiffs in some non-fringe-benefit aspect of their employment. Drawn even more narrowly, the dispositive issue is whether Edgewater Steel amended its pension plan for the purpose of inducing the plaintiffs to retire.

The Third Circuit made specific findings regarding Edgewater Steel's intent. For example, in concluding that Edgewater Steel had not breached its fiduciary duty to plaintiffs under ERISA, the Third Circuit found that "[i]t is undisputed that Edgewater Steel wanted all of the Employees to remain with the company," and that "[t]here is no evidence on this record showing that Edgewater's desire to retain these employees was motivated by any bad faith, with respect to their individual entitlement under the Plan or otherwise." 911 F.2d at 919.

In concluding that Edgewater Steel had not interfered with plaintiffs' rights to obtain pension benefits in violation of § 510 of ERISA, the Third Circuit concluded that "[t]here is nothing to indicate that the Employees would have been fired had they not chosen to retire and accept a special payment. To the contrary, it is undisputed that Edgewater Steel wanted all of the Employees to remain with the Company." 911 F.2d at 923.

The issue before the Third Circuit in that case was at least partially whether Edgewater Steel's conduct was "taken for the purpose of interfering" with a benefit. 911 F.2d at 922. In particular, the court considered whether Edgewater Steel constructively discharged the plaintiffs by creating conditions "so intolerable that a reasonable person would resign"—exactly the same constructive discharge argument which the plaintiffs put forth here. 911 F.2d at 923. The court found no intent and, in fact, found to the contrary, that "it is undisputed that Edgewater Steel wanted all of the Employees to remain with the Company." *Id.*[6]

### B. *Full and Fair Opportunity to Litigate*

■ The "full and fair opportunity to litigate" required for application of collateral estoppel does not necessitate a trial. It is well-established that a determination on summary judgment has full preclusive effect in subsequent litigation. "A summary judgment is a ruling on the merits of the case predicated upon a determination that there are no material issues of fact that necessitate trial. As a decision on the merits, a summary judgment merges or bars the action for res judicata purposes." *Prakash v. American University,* 727 F.2d 1174, 1181–1182 (D.C.Cir.1984) (footnotes omitted); *Hubicki v. ACF Industries, Incorporated,* 484 F.2d 519, 524 (3d Cir.1973); *Martucci v. Mayer,* 210 F.2d 259, 260 (3d Cir.1954); *Sims v. Mack Trucks, Inc.,* 463 F.Supp. 1068 (E.D.Pa.1979); *Raitport v.*

---

**6.** This discussion also emphasizes that Edgewater Steel's intent was crucial to the Third Circuit's ruling, thus satisfying the fifth factor of the collateral estoppel test.

*General Motors Corp.*, 450 F.Supp. 1349 (E.D.Pa.1978).

Plaintiffs had the same opportunity and the same motivation in the ERISA action as they do here to come forward with evidence which creates an issue of fact regarding the propriety of Edgewater Steel's intent in amending its pension plan. They did not do so. Plaintiffs are now bound by the Third Circuit's determination in that regard.

## CONCLUSION

Because defendant's action in amending its plan was taken pursuant to a *bona fide* pension plan and plaintiffs neither attempt to nor can show an intent to force them to retire, defendant is entitled to summary judgment in this case. Consequently, of course, plaintiffs' motion for summary judgment is denied.